NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE DEPENDENCY AS TO L.D. and O.D.

No. 1 CA-JV 26-0073

FILED 07-22-2026

Appeal from the Superior Court in Maricopa County
No. JD45272
The Honorable Michael Rassas, Judge

**VACATED AND REMANDED**

COUNSEL

Clark Jones, Mesa
*Counsel for Appellant Father*

Arizona Attorney General's Office, Phoenix
By Anna V. Vaszar
*Counsel for Appellee Department of Child Safety*

Maricopa County Legal Advocate's Office, Phoenix
By Amanda L. Adams, Phoenix
*Counsel for Appellee Children*

**MEMORANDUM DECISION**

Judge Andrew J. Becke delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

**B E C K E, Judge:**

¶1        Rogelio Favela ("Father") appeals the superior court's order adjudicating his minor children ("L.D." and "O.D.") dependent as to him. For the following reasons, we vacate and remand.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Father is the biological father of L.D. and O.D. Since birth, the children have lived with their maternal grandparents, who have primarily provided for the children's needs.

¶3        In March 2026, DCS filed a petition alleging the children are dependent as to Father due to neglect. *See* A.R.S. § 8-533(B)(2), (3). Specifically, DCS alleged: (1) Father was unwilling or unable to provide for the children due to his unmanaged mental illness, and (2) Father has a history of "unstable housing and failing to provide for his children's basic needs." DCS also alleged Father had failed to provide DCS with an address to verify he had a safe environment for his children.

¶4        The court held an adjudication hearing in April 2026. DCS presented testimony that Father had previously lived in a "run-down mobile home" in a "wrecking yard" that DCS viewed as unsafe for children. DCS also presented evidence that Father relied on a friend for housing. But the case manager testified that Father had secured an apartment five months before the hearing, and four months before DCS filed the dependency. DCS, however, would not assess Father's housing until Father participated in substance use and mental health treatment. The DCS case manager added that DCS was not willing to visit the home because "we're not at the point of reunification."

¶5        Father moved for a directed verdict, and the court granted his motion as to the mental illness allegation because DCS failed to present evidence to support that Father's unmanaged mental illness endangered the children's health or welfare. The court then found that DCS had proven by a preponderance of the evidence that the children were dependent as to Father on the second ground alleged, that Father had a history of unstable housing and failing to provide for the children's basic needs. Father's inability or unwillingness to provide for the children's basic needs and his history of unstable housing caused "substantial risk of harm to the children's health or welfare." The court also struck DCS's allegation that

Father had failed to provide DCS with his address because Father had actually done so.

**¶6**        Father timely appealed and we accelerated the appeal pursuant to Arizona Rule of Procedure for the Juvenile Court 601(d). We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8-235(A), 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶7**        Father argues that the court did not consider his present ability to parent and, instead, relied solely on historical circumstances. He contends that DCS failed to present evidence of Father's current housing conditions, and failed to inspect his residence for its safety prior to the adjudication hearing.

**¶8**        A finding of dependency requires proof by a preponderance of the evidence. A.R.S. § 8-844(C)(1). We review orders adjudicating children dependent for an abuse of discretion, "deferring to the [superior] court's ability to weigh and analyze the evidence." *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 13 (App. 2016). "We will only disturb a dependency adjudication if no reasonable evidence supports it." *Id.*

**¶9**        Under A.R.S. § 8-201(15)(a), two of the ways that a child can be found dependent is when a child is adjudicated to be:

> (ii) Destitute or who is not provided with the necessities of life, including adequate food, clothing, shelter or medical care[, or]

> (iii) A child whose home is unfit by reason of abuse, neglect, cruelty or depravity by a parent, a guardian or any other person having custody or care of the child.

A.R.S. § 8-201(15)(a)(ii)–(iii). Neglect is the "inability or unwillingness of a parent" to provide a child with "supervision, food, clothing, shelter or medical care if that inability or unwillingness causes substantial risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a).

**¶10**        For a child to be adjudicated dependent, the parent must be currently unable or unwilling to protect the child from neglect. *Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 299, ¶ 28 (App. 2020). Therefore, "the [superior] court must consider the circumstances as they exist at the time of the dependency adjudication hearing" when considering a petition for

dependency. *Shella H.*, 239 Ariz. at 48, ¶ 1. A parent's prior neglect may be evidence of that parent's continuing inability to care for the child when: "(1) the [prior] conditions were sufficient to declare the child dependent; (2) the threat giving rise to those conditions remains unresolved; and (3) the threat continues to pose an imminent risk of harm to the child." *Francine C.*, 249 Ariz. at 299, ¶ 28 (quoting *Aaron W. v. DCS*, 1 CA-JV 19-0039, 2019 WL 4695887, at *8, ¶ 37 (Ariz. App. Sept. 26, 2019) (mem. decision)). The prior circumstances "need not be continuous or actively occurring at the time of the adjudication hearing to support a finding of dependency" if the underlying threat remains "substantiated and unresolved." *Shella H.*, 239 Ariz. at 51, ¶ 16.

**¶11**        The record does not support a finding that Father's housing instability existed at the time of the adjudication. DCS only presented evidence of Father's prior housing instability. It did not present evidence to establish that Father presently lacked stable housing, his housing was unsafe, or his prior instability remained unresolved. Although the court considered Father's prior housing instability as evidence of neglect, it did not find that those conditions remained "substantiated and unresolved" at the time of the hearing. *Shella H.*, 239 Ariz. at 51, ¶ 16; *see Francine C.*, 249 Ariz. at 299, ¶ 28. To the contrary, the court noted Father had obtained housing five months before the adjudication, suggesting Father had resolved his housing instability.

**¶12**        Moreover, DCS conceded that it had not inspected Father's housing, refusing to do so because "we're not at the point of reunification." But the question was whether the children were dependent as to Father in the first place, not whether they should be reunified with Father. Because DCS had not inspected Father's house, it did not establish Father's housing instability persisted or posed a threat to his children. *Francine C.*, 249 Ariz. at 299, ¶ 28.

**¶13**        On this record, the superior court could not determine whether Father's housing instability persisted or if it posed a continuing risk to his children. *See Cochise Cnty. Juv. Action No. 5666-J*, 133 Ariz. 157, 161 (1982) (finding speculative harm insufficient to support that a parent is not exercising parental care).

**¶14**        Because there is no reasonable evidence to support that Father's living situation was unstable at the time of the adjudication hearing, we vacate the superior court's dependency finding. *See Shella H.*, 239 Ariz. at 50, ¶ 13.

**CONCLUSION**

**¶15**        We vacate the superior court's dependency order and remand for proceedings consistent with this decision.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:            JR